Opinion of the Court, by
Judge Owsley.
ON the 17th of July 1810, Campbell executed an obligation, therein reciting that he had sold to Thomas Arthur a tract of land containing 185 acres, lying in the county of Christian, and binding himself to transfer the same, and guarantee the title thereof, to any person the said Arthur might direct.
Some time thereafter, Arthur purchased of Moseby a quantity of merchandize, and to secure the payment thereof, mortgaged to Moseby the 185 acre tract, together with various other tracts. Under the mortgage, *359 and in a suit between Arthur and Moseby, the land was sold by a decree of the court, and Moseby became the purchaser, and received from commissioners, appointed under the decree, a transfer of Campbell’s interest in the land.
The patent in such case will transfer the legal title to the obligor, subject (as respects purchasers under execution with notice,) to all the equity which the obligee could claim against the obligor.
As, in such case, the obligor could not himself lawfully sell to a general creditor with notice, after the emanation of the patent the legal title discharged of the equity, it cannot, under the words of the act of assembly, be so transferred by sheriff’s sale.
As bonds for the conveyance of land are not required to be recorded, this case is not affected by the act regulating conveyances.
Subsequent to this, a patent issued from the commonwealth to Campbell, for the land, (he having, at the time of his sale to Arthur, but an inchoate title under a county court certificate and survey made thereon,) and in virtue of an execution which issued against Campbell and the Bradleys, who were his securities, the sheriff exposed the 185 acre tract to sale, and the Bradleys became the purchasers, &c.
Moseby then exhibited his bill in equity, asserting his equity under the obligation given by Campbell to Arthur, and through the mortgage given by Arthur to him, and the decree and sale made in the suit between him and Arthur. The bill, after setting forth the equity of Moseby, charges the Bradleys with notice thereof before they purchased under the execution against Campbell; and after making Campbell and the Bradleys defendants, prays for a decree compelling them to surrender the legal title, &c.
The Bradleys express an ignorance of the various circumstances through which Moseby asserts his equity, and put him on the proof thereof. They admit that they were informed of his claim before they made the purchase; but insist that as the legal title to the land was in Campbell at the time of the sale by the sheriff, it was liable to be sold under the execution, and that equity ought not to disturb their purchase made thereunder, &c.
The court below decreed the Bradleys to relinquish their claim derived under the sheriff’s sale, and directed Campbell to convey the title to Moseby, in accordance to the stipulations in his obligation to Arthur. To reverse that decree, Campbell and the Bradleys have prosecuted this writ of error.
The cause was formerly heard by this court, and as the record then contained no evidence of Moseby’s equity, the decree of the court below was reversed, by an opinion then delivered by this court. But it being suggested by the counsel of Moseby, that there was diminution in the record, a re-hearing of the cause was directed, and a writ of certiorari awarded, directing the *360 clerk of the court below to supply the alleged defect, by transmitting to this court a full and complete transcript of the record in that court. The certiorari has accordingly been returned, and from the record now before the court, Moseby is shown to have had, at the time the Bradleys purchased from the sheriff, an unquestionable equitable right to the land. The equity is shown to have passed to Arthur by the bond given to him by Campbell; and the transcript of the proceedings in the suit between Arthur and Moseby, shows that by a decree in that cause the interest which Arthur acquired under the obligation of Campbell, was sold and tranferred to Moseby, by commissioners appointed by the court. It is true, that neither Campbell nor the Bradleys appear to have been parties to that suit; but the decree and proceedings thereunder are conclusive against Arthur, and that which is conclusive against him, is evidently competent to show that the equity which he held has thereby passed to Moseby.
Assuming, therefore, the equity asserted by Moseby to be sufficiently established, the question occurs, whether or not the Bradleys can protect themselves against that equity, by their purchase from the sheriff under the execution which issued against Campbell, &c. If they had purchased and obtained a title from Campbell, without notice of the equity of Moseby, it is not pretended that they would not hold the title subject to that equity; but as they purchased from an officer of the law, under a regular process, it was contended in argument that their situation is more favorable, and their interest derived under the purchase ought not to be overreached by the prior equity of Moseby.
The principle is not, however, perceived, by which the purchase made by the Bradleys can protect them against the equity of Moseby. If they could be protected, something favorable to such an idea might be expected to be found in the provisions of the law subjecting lands to sale under executions in satisfaction of debts. But those provisions contain nothing from which such an inference can, on any rational principle of construction, be deduced. According to those provisions, the lands, tenements and hereditaments of the defendant, whether in possession, reversion or remainder, may, no doubt, be sold in satisfaction of judgments, under writs of fieri facias; and the officer making the *361 sale is required to convey the estate sold to the purchaser. But the conveyance, when made by the officer, instead of operating to pass any interest which others, not party to the judgment or execution, may have in the lands, is, by the sixth section of the act of 1792, (1 Litt. 130-1,) declared to be effectual for passing to the purchaser all the estate and interest which the debtor had, and might lawfully part with, in the lands. Now, if the conveyance which the officer makes of lands sold under execution, is barely effectual to pass to the purchaser the estate and interest which the debtor has, and may lawfully part with, it is impossible to conceive how the purchase made by the Bradleys, under the execution against Campbell, can protect them against the equity of Moseby; for that equity was created before the emanation of the execution, existed in Moseby at the time of sale, and could not have then been lawfully disposed of by Campbell to any other person. If the Bradleys, under their purchase, had obtained a conveyance from the officer before they were informed of Moseby's equity, there would be a propriety in refusing relief to Moseby; for the legal title which Campbell held, at the sale, was liable to the execution, and would pass by the officer’s deed, and equity will never compel the holder of the legal title, under a purchase for a valuable consideration without notice, to surrender it to the holder of a latent equity. But, in this case, the Bradleys must be admitted to have had notice of Moseby’s equity when they purchased, and, as all other purchasers with notice, must hold the land subject to that equity.
1 Dig. 312
We are aware, that by the act of this country regulating conveyances, (1 Litt. 565,) it is, among other things, declared, that no conveyance shall be good against any creditor, unless the writing by which the conveyance is made, be acknowledged by the party or parties who have sealed and delivered it, or be proved by three witnesses, to be his or their act, in the office of the clerk of the court of appeals, of a district court, or in a court of quarter sessions, or in a county court, in the manner prescribed by law, or in the manner therein directed, within eight months after the time of sealing and delivery, and be lodged with the clerk of the court, to be there recorded. And it may possibly be thought by some, that as the writing under which Moseby as *362 serts his equity, was not proved and lodged with the clerk to be recorded, according to the provisions of the act to which we have referred, his equity was not good against the creditors of Campbell, and ought not to prevail against the Bradleys, who are purchasers under an execution which issued in favor of a creditor of Campbell. But it should not be forgotten, that the statute has no application to executory contracts for land. Its title purports to be an act regulating conveyances, and its several provisions abundantly show that it was not to prescribe the mode by which a merely equitable interest in lands might be effectually transferred, but to provide for the conveyance of legal titles, that the statute was enacted. According to the statute, the legal title, as respects the interest of creditors, will remain as though no conveyance had been made, unless the conveyance be made, proved and lodged with the clerk to be recorded, as directed by the provisions of the statute. But, whilst it is conceded, that a conveyance, to pass the legal title, as to creditors, must conform to the act, it cannot be admitted, that a conveyance, though not proved and recorded as required by the act, passes no interest to the person to whom made. If made with intent to defraud purchasers or creditors, the conveyance, no doubt, could not, as to the creditors of the grantor, pass any interest, either legal or equitable, to the grantee. But the mere failure to prove and record the deed of conveyance, as required by the statute, is not, per se, fraudulent; and if made on a valuable consideration, although not regularly proved and recorded, vests in the grantee a specific equity to have the title perfected, so as to be operative against all the world; and the holder of such an equity is always preferred, in any contest with the general creditors of the vender, or subsequent purchasers with notice.
That such will be the operation of a deed of conveyance made on sufficient consideration, though it may not have been proved and lodged with the clerk to be recorded, within the regular time prescribed, may be illustrated by the adjudications of the English courts, on their statutes concerning the registration of certain deeds. It is there enacted, that deeds of a described character shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless a memorial thereof be registered *363 in the manner thereby prescribed, before the registering of the memorial of the deed under which such subsequent purchaser or mortgagee shall claim. It will be perceived, that by this act nothing is said about the subsequent purchaser having notice of the prior conveyance; but the prior deed is expressly declared to be void, unless registered within the time prescribed by the statute. Under that statute, however, a question occurred, whether a person buying an estate with notice of a prior incumbrance not registered, should be bound by such incumbrance, although he had obtained a priority at law, by registering his deed. It was held, that by force of the statute, the subsequent purchaser was vested with the legal title; but, having notice of the prior incumbrance, he was bound by it, and in equity compellable to surrender his title. Sug. Law Ven. 471, and the authorities there cited.
1 Dig. 312
A majority of the court (Judge Mills dissenting,) are of opinion, therefore, that the former opinion of this court be set aside, and the decree of the court below affirmed with costs.